## Hack *v.* Shovlin, Appellant.

*Contracts—Building contracts—Construction — Abandonment— Evidence—Case for jury.*

In an action for work and labor done and materials furnished under a building contract the defense was that plaintiff had forfeited his right to recover by refusing to proceed with the contract in accordance with its terms. The contract provided that on the first day of every month estimates should be made by the architect of the work done on the building and on the same day the amount of said estimate, less ten per cent., should be paid the contractor. An estimate was made with which plaintiff was not satisfied, and he thereafter notified defendant that he would not prosecute the work until upon a re-estimate he was paid what was due him. After the re-estimate was made defendant did not pay what was due plaintiff thereunder, but finished the work at his own expense. *Held,* the court properly submitted to the jury the question whether plaintiff had abandoned the contract by refusing to proceed until he was paid, and a verdict for plaintiff was sustained.

Argued April 10, 1917.  Appeal, No. 39, Jan. T., 1917, by defendant, from judgment of C. P. Luzerne Co., March T., 1914, No. 641, on verdict for plaintiff, in case of John Hack v. John F. Shovlin.  Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ.  Affirmed.

Assumpsit on a building contract.

GARMAN, J., filed the following opinion, sur defendant's motion for a new trial:

Plaintiff and defendant were parties to a building contract dated November 10, 1913, wherein the plaintiff agreed to do the work and furnish the materials for the sum of $6,907; and defendant agreed to pay said sum,

the manner of payment set forth in the contract as follows: "On the first day of every month the architect shall make a monthly estimate of the value of the work done on the building, on which day the amount of said estimate, less 10% shall be paid contractor; when the final estimate is made and building accepted the 10% reductions theretofore made shall be added to and made part of the final payment. And it is hereby expressly covenanted, understood and agreed by the said party of the first part that 10 per cent. of the amount of each payment is to be retained by the party of the second part until the said building is completed and finished, and finally accepted by the party of the second part."

On the 1st of December, 1913, the architect made an estimate addressed to Mr. Shovlin in the following form: "This is to certify that the first payment of $360 is due to John Hack, contractor on your building, Park Avenue, Wilkes-Barre, Pa., John J. Feeney, Architect, John Hack, Contractor." This paper was accepted by both parties as an estimate and defendant paid to plaintiff the sum of $360.

On the 1st of January, 1914, the architect presented a paper addressed to Mr. Shovlin reading as follows: "This is to certify that the second payment of one thousand dollars is due to Mr. John Hack, contractor on your building, Park Avenue, Wilkes-Barre, Pa., John J. Feeney, Architect. Amount of contract $6,907, previously paid $360, this certificate $1,000, balance $5,547." To this paper plaintiff objected on the ground that it was not a proper estimate and demanded a re-estimate.

On the 7th of January, 1914, the architect sent in another paper as follows: "Wilkes-Barre, January 7th, 1914, Mr. John Shovlin, Dear Sir:—I have re-estimated the amount of work and materials fixed in on your building, Park Avenue, as done by your contractor, John Hack, for the month of December, 1913, as follows: Entire excavation, 766 yards at .60, $459.60, 68 yards of concrete at $6.00, $408.00, brick wall in cellar at $15 per

thousand, $82.00, 9790 feet hemlock at $45.00 per thousand, $440.55, 10 cellar-window frames at $1.50, $15.00, total $1,405.15. John J. Feeney, Architect." This paper was delivered to Mr. Shovlin, who declined to pay Hack according to its findings but offered Hack a check for $1,000, as per certificate of January 1, 1914.

Now, if the case rested right here who would doubt that Shovlin should have paid Hack $1,264.63, the amount of the estimate less 10%.

But on the 5th of January, 1914, Hack sent to Shovlin a letter as follows:—"I have been advised by my attorney to notify you that John J. Feeney, Archt. for your building, Park Ave., City, is to re-estimate the amount of work and material furnished on said building to January 1st, 1914, in a fair and honest manner. I also demand a copy of his estimate to date. I will allow you for readjustment until January 6th, 1914, at 4:30 p. m. If not settled satisfactory by said time and date I shall quit work on your building and hold you responsible for all delays."

As indicated in this letter, Hack quit work on the 6th of January, 1914, at 4:30 p. m.

On the 8th of January, 1914, Shovlin and Feeney sent to Hack the following letter:—"You are hereby notified that because of your having quit working on the John F. Shovlin building on Park Avenue, City of Wilkes-Barre, Pa., which you contracted to build for him, and having neglected to supply a sufficiency of materials and workmen whereby, in our opinion, the completion of the said building at the time specified will be prevented, and having failed and refused to follow the drawings and specifications, it is our intention to enter and take possession of the premises and Bldg. in three (3) days after service of this notice on you and provide materials and workmen to complete and finish said Bldg. as provided in the specifications and contract. For any loss sustained by John F. Shovlin resulting from your refusal or failure to perform the contract you will be held responsible."

This letter was followed by one dated January 26, 1914, to Shovlin from Hack's attorneys demanding the sum of $2,361, the amount claimed by Hack to be due to him for materials furnished and work and labor done to January 1, 1914.

Now at this point a review of the circumstances will disclose these facts:

1st—Hack demanded of Shovlin a new and honest estimate, threatened to quit work and did quit work on the 6th of January, 1916.

2d—Shovlin on January 7, 1914, received an estimate showing the items of work and material furnished by Hack and the sum of $1,405.15 due him.

3d—Shovlin and Feeney both knowing of the contents of the re-estimate on January 8, 1914, demanded without tender of full payment that Hack proceed within 3 days or forfeit his contract.

After the 8th of January, Hack did no more work and Shovlin made a contract with another person to complete the work, and in the trial claimed from Hack in the sum of $7,439 for failure to complete his contract and for expenses incurred in correcting Hack's bad work.

As to the estimate we instructed the jury that if the architect had stood by his estimate known in the case as of January 1st, both Hack and Shovlin would have been bound by it; but when the architect made a re-estimate showing the incorrectness of the first paper, Shovlin was bound by it and therefore would not be entitled to set off against Hack any expense except such as was necessary to correct bad work done by Hack; that Hack might recover such sum as the jury should find to be the actual value of the materials furnished and work done up to January 7, 1914, less such amount as the jury would deduct for payments made to Hack and for bad work or defective work attributable to him.

And on consideration of these instructions we are unable to see any error. As a fact there was no estimate worth considering until that of January 7th. The con-

tract specified that Hack was entitled to a monthly estimate of the value of the work done on the building and to pay for the value less ten per cent. When, therefore, Shovlin learned on the 7th of January that there was due on the 1st of January a sum of excess of the first estimate, he was bound to tender Hack the sum due less ten per cent.

But Shovlin claimed that as threatened by the letter of January 5th, Hack quit the work and abandoned his undertaking. This Hack denied and averred that he quit the work only pending the dispute about the estimate. As to these contentions we said to the jury: "If you find that Hack absolutely quit on the 5th of January before this estimate of the seventh came into the hands of Mr. Shovlin then I think he is not entitled to recover." Also, "You will be permitted to take this letter of Mr. Hack, and your material question will be, was that letter an absolute declaration of forfeiture of the contract on the part of Mr. Hack? If so, this being an entire contract, I would instruct you that Mr. Hack could not recover. But if it was only a notice that he would cease work pending the determination of the estimate, then we would say to you that after Mr. Shovlin got the estimate on the 7th of January, it is our opinion that he would be liable for its amount and having himself forfeited the contract afterward by the letter of the 8th of January, he could not recover for anything that he afterward spent in the erection of the building, and could only recover in the way of set-off the amount that he may have had to spend for work that was not properly done while the contractor was in possession."

If our theory be correct that the estimate of January 7th was binding upon Shovlin and Hack, then it follows that Shovlin was bound to tender Hack payment as shown by the estimate less ten per cent.; if the jury found that Hack suspended work only during and pending the making of an "honest estimate" then he would be entitled to full pay for work done up to the time that

Shovlin took possession of the premises.    We believe this view of the case the just one and that our charge to the jury properly left to them the determination of disputed facts.

Defendant's first exception is to our answer to his third point, which point was as follows:

"3. The architect did make an estimate of the value of the work done on the building during the month of December, 1913, by the plaintiff and the defendant tendered to him a check in payment of the amount of said estimate which was refused," to which we answered:

"I will not affirm that point, but will say to you that there is evidence to justify your so finding.    Even if there be no contradiction, the facts are for the jury."

Our answer simply left to the jury whether the certificate of January 1st was an estimate.

The second exception is to our answer to his fourth point, which point is:

"4. Even if said estimate were made in bad faith and for a dishonest purpose (and there is no evidence that it was) such action on the part of the architect could not affect the rights of the defendant under the contract unless he were a party to it;" and the answer thereto was:

"That point is affirmed.    We have already told you, however, that when the second estimate was tendered to Mr. Shovlin and he retained it without complying with it, if he had any liability it was then revived, and he would have been liable for the amount of the said estimate."

In this we see no error.    In view of the affirmation of the point, it was proper to refer to previous instructions applicable to "action on the part of the architect" relating to his estimates.

We do not deem it necessary to discuss the other exceptions taken because we do not think they are well taken and therefore the rule for new trial is discharged.

Verdict for plaintiff for $2,478.95, and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury and in refusing to direct a verdict for defendant.

*M. J. Mulhall,* with him *A. C. Campbell,* for appellant.

*J. Q. Creveling,* with him *G. B. Kleeman,* for appellee.

PER CURIAM, May 14, 1917:

The learned trial judge instructed the jury to find as a fact whether the written notice of the appellee to the appellant of January 5, 1914, was an absolute abandonment of the contract by the former, or merely that he would not prosecute the work until, upon a re-estimate for December, he was paid what was due him. The finding of the jury was that he had not absolutely abandoned the contract, and, as the appellee did not tender payment to him of the amount due on the re-estimate of January 7th, he was entitled to recover. This was the correct view of the court below in discharging the rule for a new trial, and the judgment is affirmed.